NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

IRVING GIFFORD, PETITIONER, v. TIMBROECK NEWMAN,
RESPONDENT.

**Injury to Foot While Operating a Gasoline Engine Running a Power Shovel—Engine Back-fired, Causing Severe Sprain—Temporary Compensation Awarded, Amount of Permanent Compensation a Ground for Dispute—Testimony Regarding Extent of Injury.**

On petition, &c. On determination and order.

This is a case in which the petitioner, Irving Gifford, seeks compensation for an injury to his right foot and ankle, while in the employ of the respondent, Timbroeck Newman, arising out of and in the course of his employment on the 7th day of June, 1926.

The case was heard by me at Asbury Park on the 30th day of December, 1926, and at the outset counsel for the petitioner and respondent stipulated that the petitioner was in the employ of the respondent on June 7th, 1926, at the time of the injury, and that the respondent had timely notice thereof, and that the said injury sustained by petitioner arose out of and in the course of his employment by respondent, so that the only matters to be determined are the duration of temporary disability and the amount of permanent disability, if any.

It appears from the testimony of the petitioner that the respondent was engaged in the business of carting, grading and general excavating, and that in connection with his business the respondent owned and caused to be operated an excavating shovel. The shovel was propelled and operated by a gasoline engine. The petitioner was employed by respondent to operate this shovel, and while operating it at the borough of Interlaken, New Jersey, on the 7th day of June, 1926, the engine stopped. It appeared to be the custom to start this engine by applying force to the starting apparatus

with the operator's foot, and while attempting to start the engine it "kicked" or "back-fired," causing a severe sprain of petitioner's right foot and ankle. The petitioner was compelled to cease work immediately and seek medical aid. It appears that a son of the respondent was working with or nearby petitioner, and the son took petitioner to the office of Dr. Reginald S. Bennett, at Asbury Park, where petitioner was treated for his injury. Petitioner testified that he made several visits to the office of Dr. Bennett, by whom he was treated on each visit. The last visit by petitioner to Dr. Bennett was on or about October 1st, 1926. It appears that petitioner had been engaged in excavating shovel work for a great many years, and that this was his usual line of work. He testified that on or about October 1st, 1926, he had endeavored to secure employment at some other kind of work, but found that his foot and ankle were too weak to permit him to do any kind of work, and he therefore had to give it up after working only a day or two. He also testified on the day of the hearing that his foot and ankle were still weak, and that any unusual exertion on the part of his foot and ankle, caused him considerable pain. At the time of his injury petitioner was receiving a wage of $45 per week.

Dr. Bennett testified that petitioner came to him on or about June 7th, 1926, and that he examined petitioner and found him suffering from a severe sprain of the right foot and ankle. It also appears from the testimony of Dr. Bennett that petitioner called at his office thirteen times for treatment, the last visit being about October 1st, 1926. Dr. Bennett examined petitioner's foot and ankle the day of the hearing, and after this examination testified that he still found some soreness, but in his opinion petitioner's foot and ankle had improved about as much as it ever would. He also testified that it was his opinion that up to that time petitioner had been unable to pursue his usual occupation on account of this injury, and that the petitioner had suffered about a fifteen per cent. permanent loss of the use of his foot and ankle. Dr. Bennett also testified that he had treated petitioner thirteen times and that he made a charge of $3 for

each treatment, but that he had not presented the petitioner with a bill, although he had told him how much it would be.

Dr. Daniel F. Featherston testified that he had examined petitioner's foot and ankle at the request of respondent, and that he found petitioner suffering from a sprain. He said it was his opinion that the petitioner was able to resume his usual employment on October 1st, 1926, and that petitioner had reached the maximum improvement at that time. He also said that it was his opinion that petitioner had suffered not more than a five per cent. permanent loss of the use of his foot and ankle.

### DETERMINATION AND ORDER.

From the foregoing I am of the opinion that Mr. Gifford was in the employ of the respondent on the 7th day of June, 1926, at the time of the injury, and that the said injury arose out of and in the course of his employment, of which injury respondent had due notice within the statutory period; that petitioner was employed by the week at the rate of $45 per week, and that as a result of the said injury petitioner suffered a temporary disability lasting from June 7th, 1926, to December 30th, 1926, and that petitioner has a permanent disability consisting of fifteen per cent. of loss of use of the right foot. Petitioner is entitled to his medical expenses amounting to $39.

It is therefore on this 25th day of January, 1927, ordered that respondent pay to the petitioner compensation for temporary disability at $17 per week, from June 7th, 1926, to December 30th, 1926, twenty-nine and four-sevenths weeks, amounting to $502.71, all of which is due as of December 30th, 1926, and seventeen and three-fourths weeks at $17 per week for permanent injury consisting of fifteen per cent. of loss of use of the right foot, amounting to $301.25, and the sum of $39 for medical expenses.

The respondent will also pay to the petitioner's counsel the sum of $100 for his services in this cause.

W. E. STUBBS,
*Deputy Commissioner.*